Cauuti-iers, J.,
delivered the opinion of the Court.
This was an action of debt, for $250.00, instituted by Attorney General Bridges, in the Circuit Court of McMinn, in the name of the State of Tennessee, against Elijah Cate, for standing a jack for mares for the year 1853, without taking out a license for the privilege, according to the act of 1835, ch. 13, § 4.—Car. & Nich., 603.
The main ground of defence is, that the act of 1835 is repealed, by implication, by the act of 1848, ch. 161, § 23. Upon a charge- of the law differently by the Circuit Judge, a verdict and judgment were rendered against the defendant, and appeal in error to this Court.
In 1835, doubts were entertained as to the power to impose any other than an ad valorem tax upon this kind of property; and, regarding it in that light, it would fall under the restriction contained in the 28th section of the 2d article of the Constitution, which prohibits any “ one species of property from which a tax may be collected,” from being “ taxed higher than any other species of property of equal value.” But, by the next clause, power is given to the Legislature, “ to tax merchants, pedlars, and 'privileges, in such manner as they may, from time to time, direct.” This kind of property being generally more productive than any other of the same value, it was not thought to be just or equal that it should only be subject to an ad valorem tax. To avoid this difficulty, it became necessary to constitute it a privilege, and to tax it as such. A privilege, in this sense, is that which *122 cannot be enjoyed without legal authority, which is generally evidenced by license. They are of legislative creation, and when exercised without license or authority, are generally visited with penalties upon the offenders. Several of these were created by the revenue act of 1835, above referred to. In relation to the one' under consideration, the act is, “ That no person shall keep a stallion or jack, for mares, without first obtaining from the Clerk of the County Court a license for that purpose, for which he shall pay at the time the season price for one mare and fifty cents for such license; and if any person shall stand a stallion or jack for mares, without obtaining a license as aforesaid, he shall forfeit and pay the sum of $250, to be recovered by an action of debt, in the Circuit Court, in the name and for the use of the State, and the same shall be a lien on the said stallion or jack.”
There can be no doubt, then, of the liability of the defendant to this penalty, unless this law has been repealed, as is contended, by the act of 1848, ch. 161, §§ 23, 24, 25, page 267. There is no express repeal, but it is insisted, it so operates by implication. If the two acts cannot stand together, the former must give way to the latter. Such must be the effect, if their provisions are inconsistent. But if they can both have effect, and are not incompatible with each other, an implied repeal does not take place, and we must give operation to both. The last act, after enumerating . the privileges for which- license must be obtained, including the one under consideration, in the 23d section,- provides that, "If any person presume to sell *123 goods, or exercise any privilege, without obtaining the license above prescribed, the Clerk shall issue to the sheriff, or any constable of the county, a distress warrant, commanding him to levy the tax, costs and charges, by destraining and selling so much of the delinquent’s goods and chattels as may be sufficient for that purpose.” The only other provision on this subject, is in the 7th clause of the 8th section, page 255, which fixes the tax at the insurance price of one mare or jennet.
This act does not change the substantial provisions of that of 183.5. There may be some difference in the amount of the tax, but that can have no effect upon the penalty when nothing is paid, and the law infringed by failing to obtain license.
Now, is there any thing incompatible in the two acts? The last act affords a speedy and summary remedy for the collection of the tax, but has no reference to the penalty for violating the law, by exercising this privilege without license. It is true, the penalty prescribed is heavy, but it was designed to be so for the protection of the revenue. It was intended to deter men from the violation of the law, by the terrors of a heavy penalty in case of detection. Such is and must be the policy of any State in regard to its tax laws. If there were no liability beyond the amount of the tax and a little cost, in case of detection, men would take their chances of escape, and care but little about complying with the laws. The penalty is the life of all laws, and particularly those relating to the public revenue. Without it, they would be vain and nugatory. Men *124 are too much disposed to make a distinction between honesty and fair dealing, with individuals and the public. Many suppose there is no great harm in cheating the State out of her dues, whenever they can do so with impunity, in disregard of the sacred injunction, that the “things which are Csesar’s should be given unto Csesar.” They seem to think there is one standard for private and another for public honesty, which is untrue and fallacious.
The Legislature of 1835, intended, if men would not, as good citizens, render voluntary obedience to laws that were just and equal, that heavy penalties should be inflicted upon them, in cases where the public interest imperatively required it; and the Legislature of 1848, after twelve years more experience, did not, as we think, see any sufficient reason to change that policy, nor have they done so, in this particular.
The defendant, then, is subject to the penalty of $250, as was correctly held by the Circuit Judge.
Several questions are made on the form of the pleadings, none of which, in our opinion, can avail the defendant any thing, and their discussion would now be unprofitable and useless.
We find no error in the record, and affirm the judgment.